**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 12-217-DLB**

**RHONDA J. BARTON**                                                        **PLAINTIFF**

**vs.**                       **MEMORANDUM OPINION & ORDER**

**CAROLYN W. COLVIN, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## I.  INTRODUCTION

Plaintiff brought this action pursuant to 42 U.S.C. Section 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Rhonda J. Barton first filed an application for disability, disability insurance, and supplemental security income on July 7, 2006.  (Doc. # 8-1, at 15).  Plaintiff alleged that a work-related injury caused serious neck pain and other physical problems, including arm numbness and high blood pressure.  (Doc. # 8-1, at 64).  Moreover, Plaintiff alleged that she suffered from depression and anxiety. (Doc. # 8-1, at 64.)  These claims were denied.  (Doc. # 8-1, at 61).

1

At plaintiff's request, an administrative hearing was conducted before Administrative Law Judge Frank Letchworth. (Doc. # 8-1, at 70). ALJ Letchworth ruled that Plaintiff had the following severe impairments: cervical strain injury, mild bulge at the C5-6 vertebrate, degenerative disk disease, high blood pressure, obesity, and depressive disorder. (Doc. # 8-1, at 63). Despite these impairments, ALJ Letchworth found that Plaintiff had the capacity to perform "light exertion work" with limitations spelled out in detail in a residual functional capacity (RFC) determination. (Doc. # 8-1, at 67). Because of the availability of jobs in the national economy that Plaintiff could perform, ALJ Letchworth ruled on June 27, 2009 that plaintiff was "not disabled" under sections 216(I), 223(d), and 1614(a)(3)(A) of the Social Security Act, and was consequently not entitled to benefits. (Doc. # 8-1, at 69-70).

On March 3, 2009, Plaintiff filed for disability, disability insurance, and supplemental security income a second time. (Doc. # 8-1, at 15). After those claims were denied, Plaintiff again requested a hearing, which was conducted by Administrative Law Judge Tommye C. Mangus on August 12, 2010. (Doc. # 8-1, at 29). Plaintiff claimed that her depression and anxiety had worsened, (Doc. # 8-1, at 42), and that both her physical pain and psychological maladies prevented her from working. (Doc. # 8-1, at 49).

ALJ Mangus conducted a thorough review of the evidentiary record. ALJ Mangus considered the opinions of Dr. Frederic Huffnagle, an orthopedic specialist who examined Plaintiff at the request of Plaintiff's attorney, and Phil Pack, a psychotherapist who also examined Plaintiff at the request of Plaintiff's attorney, (Doc. # 8-1, at 388-397 and 408-418), as well as numerous state agency medical consultants and Plaintiff's testimony. Invoking administrative res judicata, ALJ Mangus ruled that circumstances had not

significantly changed since the prior ALJ last heard Plaintiff's case. (Doc. # 8-1, at 15). Consequently, Plaintiff remained "not disabled" under sections 216(I), 223(d), and 1614(a)(3)(A) of the Social Security Act, and was not entitled to benefits.

On October 31, 2012, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment which are now ripe for adjudication. (Docs. #10, 11).

## III. STANDARD OF REVIEW

The Court's review is limited to determining whether the Commissioner's decision followed proper legal standards and whether the Commissioner's findings are supported by substantial evidence . *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this deferential standard, courts will not substitute their judgment for that of the ALJ. *Id.* The Court does not resolve evidentiary conflicts or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Interpretations of statutes and agency regulations are questions of law, which the Court will review de novo. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

## IV. DISCUSSION

### A.    ALJ Mangus properly found that the prior ALJ's findings had preclusive effect on Plaintiff's most recent claim for benefits.

When an ALJ hears a claim for benefits, he is bound by a prior ALJ's factual findings absent "new and material evidence as to those findings." *Gay v. Comm'r of Soc. Sec.*, 12-1653, 2013 WL 1316130, at *2 (6th Cir. Apr. 2, 2013); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840-43 (6th Cir. 1997). In *Drummond*, the Sixth Circuit applied principles of res judicata and held that the RFC of a prior ALJ had preclusive effect in future

administrative proceedings because no new evidence was brought to bear. *Id.* at 843. The prior ALJ had determined that the claimant Drummond was able to do "sedentary" work only. *Id.* at 838. When Drummond later reapplied for benefits, her "sedentary" work restriction, combined with her increasing age, would have qualified her for disability benefits. *Id.* at 839. But the subsequent ALJ, without sufficient evidence of changed circumstances, classified Drummond as able to do "medium" work, and thus ineligible for disability benefits. *Id.* The Sixth Circuit ruled that without any evidence of an improving condition, the subsequent ALJ was bound by the prior ALJ's findings. *Id. at 843.*

What Drummond makes clear is that subsequent ALJs do not paint on a blank canvass. The subsequent ALJ is bound by the earlier RFC unless new and material evidence is brought to bear. *Drummond*, 126 F.3d at 842. Notably, "the party seeking to avoid the application [of res judicata] must prove a change in circumstances." *Fore v. Astrue*, Civ. Action 08-208-WOB, 2009 WL 331353, at *3 (E.D. Ky. Feb. 10, 2009). To determine whether circumstances have changed, "a comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of the review is necessary." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007).

1. **Plaintiff failed to show that her physical limitations had substantially changed since the Plaintiff's first application for benefits was denied.**

ALJ Mangus compared the new evidence against the prior ALJ's determinations and found that Plaintiff's physical limitations had not changed enough to depart from the RFC. Regarding those physical limitations, Plaintiff points to no new evidence besides the assessments of two experts—Dr. Robert Brown, a state agency medical consultant, and Dr. Frederic Huffnagle, a board certified orthopedic surgeon. (Doc. #10, at 8-9; Doc. #12,

at 3-6). But expert opinion standing alone does not necessarily establish changed circumstances. This is especially true when, as in this case, the opinion of one expert counters the opinion of another: Dr. Brown determined that Plaintiff was not as limited as the RFC indicated, while Dr. Huffnagle's assessment indicated the opposite—that the plaintiff was more limited. (Doc. # 8-1, at 380-97).[1]

Plaintiff protests the little weight afforded Dr. Huffnagle's physical evaluation, partly because of Dr. Huffnagle's status as an examining physician. (Doc. #12, at 2-3). This lack of weight allegedly violates agency rules. (Doc. #12, at 2-3). It is true that examining sources are typically given more weight than non-examining sources. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). But the supremacy of examining sources is not etched in stone: the ALJ must assess the weight due to these opinions "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), *reh'g denied* (May 2, 2013). Here, ALJ Mangus noted that Dr. Huffnagle had never "treated the claimant for her physical or mental impairments." (Doc. # 8-1, at 22) Further, Dr. Huffnagle's assessment was unsupported by Plaintiff's own treating physicians at the Clover Fork Clinic, who found that the Plaintiff had no neurological abnormalities. (Doc. # 8-1, at 22).

---

[1] Plaintiff makes an odd claim regarding Dr. Brown's assessment that the Court feels the need to address—that the ALJ "ignored the non-exertional restrictions assessed by Dr. Brown." (Doc. #10, at 5). This is allegedly prejudicial, but the non-exertional restrictions assessed by Dr. Brown are just as unfavorable to the Plaintiff as the exertional ones. In the non-exertional limitations section of the RFC, Dr. Brown assessed that *frequent* stooping, kneeling, and crouching were acceptable work conditions for Plaintiff, (Doc. # 8-1, at 382) (emphasis added), while the RFC allows for "no more than *occasional* stooping, bending, or crouching," (Doc. # 8-1, at 22) (emphasis added). The RFC is obviously more limited than Dr. Brown's assessment—both the exertional and non-exertional sections. The Court is left to conclude that Plaintiff simply misread the record.

Plaintiff maintains that the Clover Fork records indicate something different—that Plaintiff could not get a neurological test because of her insurance status and that her treating history at Clover Fork suggests that her condition had worsened. (Doc. #12, at 3).

The Court finds no support for this in the record. In treating notes dated Dec. 7, 2009, physician's assistant Mike Napier indicates that Plaintiff claimed she could not get a nerve conduction study (NCS) test because of an equipment malfunction—not because she had no insurance. (Doc. # 8-1, at 402). Notably, Clover Fork records show that treating professionals had encouraged Plaintiff to seek an NCS test for at least a year. (Doc. # 8-1, at 295). As ALJ Mangus recognized, the treatment notes contain far too little objective medical evidence of the Plaintiff's limitations. (Doc. # 8-1, at 22.) Much of the evidence is based on Plaintiff's claims or statements, rather than medical testing. (*See, e.g.*, Doc. # 8-1, at 289 – 335).

Plaintiff appears to be confused regarding the role of Dr. Brown in ALJ Mangus's decision adopting the prior RFC. The ALJ did not "rely" on Dr. Brown's recommendations to "reject" the opinion of Dr. Huffnagle. (Doc. #12, at 5). Dr. Brown's opinion was given "some" weight, while Dr. Huffnagle's opinion was given "little" weight. (Doc. # 8-1, at 19-22). After giving each opinion its due weight and considering other factors—like the Plaintiff's testimony, the Plaintiff's lifestyle, and treatment notes—ALJ Mangus found insufficient justification for departing from the prior RFC. (Doc. # 8-1, at 19-22). In doing so, ALJ Mangus was performing the tasks assigned by statute to ALJs: deciding questions of credibility and resolving evidentiary conflicts. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). ALJ Mangus weighed the evidence appropriately, and the ALJ's findings were supported by substantial evidence.

Similarly, the Court finds little evidence to suggest that "[Dr. Brown] was provided with a completed residual functional capacity assessment and asked to sign it." (Doc. #12, at 4). While it is true that the preliminary RFC assessment completed by agency decision maker Janelle Walker is similar to the one signed by Dr. Brown, they are not carbon copies. (Doc. #8-1, at 354-361, 380-87). On page six of Dr. Brown's form, for instance, he notes that Plaintiff's claims of a worsening condition are not supported by the medical evidence of record. (Doc. #8-1, at 385). This language is not duplicated on Walker's form, (Doc. #8-1, at 359), so any assertion that Dr. Brown signed off on Walker's form without further adjustment is simply false. And just because Dr. Brown's assessment was largely the same as Walker's does not establish that Dr. Brown failed to discharge his duties in evaluating Plaintiff's disabilities. The evidence suggests that Dr. Brown did more than "sign off" on someone else's form.

In *Johnson v. Commissioner of Social Security*, 652 F.3d 646 (6th Cir. 2011), the Sixth Circuit held that under certain circumstances, an assessment form that simply parroted someone else's evaluation was inadequate evidentiary support for an ALJ's findings. *Id.* But in *Johnson*, the assessment form in question misstated the claimant's gender, and there was uncontroverted evidence that the assessing physician was presented with a completed assessment, which he then signed off on. *Id.* at 650-51. There is no comparable evidence in this case suggesting that Dr. Brown's assessment was so unsupported by his own evaluative efforts.

Even if it was true that Dr. Brown simply signed off on the findings made by an agency decision make, that fact likely would not affect the outcome of this case. First, as noted above, Dr. Brown's assessment was one of many pieces of evidence relied upon by

ALJ Mangus. *See supra* Part IV.A.1. Further, in *Johnson*, the agency consultant's assessment was directly contradicted by a treating physician who had seen the claimant twenty-two times over a two-year period and had administered an objective medical test to evaluate claimant's condition. *Johnson*, 652 F.3d at 652. In the present matter, there is no treating physician rebutting the opinion of Dr. Brown or the agency decisionmaker.

Because ALJ Mangus properly weighed the opinions of the relevant experts against other evidence in the record, Plaintiff has not shown that her physical limitations justify departure from the prior RFC.

### 2. Plaintiff has not demonstrated that her psychological condition has significantly deteriorated in recent years.

Besides the physical claims, Plaintiff also argues that her mental limitations exceed the RFC adopted by ALJ Mangus. (Doc. #12, at 6). In support, Plaintiff points to the assessments of three mental health experts—Drs. Jane Brake and Edward Stodola, and psychotherapist Phil Pack—that allegedly show her mental restrictions far exceed the previously adopted RFC. (Doc. #12, at 6-7). Dr. Brake's assessment indicates that Plaintiff is either "not significantly limited" or "moderately limited" for all mental tasks. (Doc. # 8-1, at 350-53). Dr. Stodola's assessment is virtually identical to Dr. Brake's. (Doc. # 8-1, at 376-79). Mr. Pack's assessment was bleaker: while noting that Plaintiff had the ability to "establish rapport" and "tend to her basic self care," he concluded that her psychological function was either fair or poor, depending on the task.

ALJ Mangus also considered these three mental health reports in conjunction with Plaintiff's testimony. (Doc. # 8-1, at 20-22). She assigned little weight to Dr. Pack's bleak conclusion, as his ultimate conclusions were partially undermined by his particularized

findings. (Doc. # 8-1, at 22). For instance, Dr. Pack indicated that Plaintiff was able to establish rapport with others and that she capably cared for her own needs. (Doc. # 8-1, at 409-12). This is inconsistent with debilitating psychological problems. Furthermore, the record indicates that Plaintiff was dishonest about her mental health treatment history, and had not sought treatment for many months. (Doc. # 8-1, at 22). In light of these facts, it was hardly unreasonable for ALJ Mangus to conclude that Plaintiff's level of mental impairment was insufficient to justify a departure from the prior RFC.

Plaintiff accuses ALJ Mangus of "cherry picking" information from the psychological experts to come to her conclusion. (Doc. #12, at 7). Selective use of evidence was criticized in *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417 (6th Cir. 2013), which held that an ALJ must consider all relevant parts of the record in finding that a claimant is (or is not) disabled. *See id.* at 436 ("The ALJ's failure to mention, let alone analyze, all of this evidence in the record … persuades us that his decision is not supported by substantial evidence.")

The Court finds that *Minor* is inapposite here. In *Minor*, the ALJ failed to accord multiple treating physicians their due weight and, importantly, said nothing about why. *Minor*, 513 F. App'x., at 535-36. This has not happened here: not one of the three psychological experts that Plaintiff relies on were treating Plaintiff for her mental problems. Further, in *Minor*, the ALJ ignored a large volume of evidence that the claimant suffered from serious mental problems. *Id.* The Sixth Circuit took issue, not with the way the ALJ balanced the evidence, but with the fact that the ALJ did not even consider large parts of the record in the first place. *Id.* For example, the ALJ noted that the claimant had a "lack of any significant treatment over the years for any psychological issues." *Id.* This assertion

was squarely contradicted by the record: claimant had for years attended counseling and psychiatric treatment, and had been prescribed medication for depression, anxiety, and panic disorder. *Id.* Meanwhile, the ALJ relied on the report of an examining psychologist to discredit claimant's subjective complaints without even considering that the same report buttressed those complaints. *Id.* The Sixth Circuit held that this kind of cherry picking was unacceptable for an ALJ. *Id.* at 438-439.

ALJ Mangus did not engage in any type of cherry picking here. Plaintiff points to no helpful evidence in the record that ALJ Mangus ignored. ALJ Mangus considered the reports of all relevant psychological experts before rendering a decision. The ALJ assigned weight to each assessment, and provided justifications for doing so. (Doc. # 8-1, at 22). No uncontroversial parts of the record clearly rebut any of ALJ Mangus's factual findings.

Nor did ALJ Mangus selectively rely on the opinions of the psychological experts. Drs. Brake and Stodola assessed that Plaintiff could do the following:

- · understand and carry out simple instructions
- · concentrate and persist at simple familiar tasks, so long as those tasks involve minimal variation in two-hour segments
- · adapt adequately to changes, if reasonable support and structure is provided.

Plaintiff contends that these limitations are not reflected in the mental component of the RFC (Doc. #12, at 6). Yet the RFC limits Plaintiff to tasks that involve simple instructions and no more than occasional contact with others. (Doc. # 8-1, at 22). The RFC further limits plaintiff to "low stress work" and jobs that include "no more than occasional change in the work setting." (Doc. # 8-1, at 22). Each of these limitations adequately addresses Plaintiff's abilities.

It is unclear why the Plaintiff finds this RFC so objectionable in light of Drs. Brake's and Stodola's assessments. But even if it were the job of this Court to "put flesh on the bones"[2] of Plaintiff's argument, there is no conflict between the RFC and the opinions of Drs. Brake and Stodola. ALJ Mangus was under no obligation to incorporate verbatim the assessment of the psychological experts into the RFC. An RFC need only include what Plaintiff "can and cannot do, not what she does and does not suffer from." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)*; Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Based on all of the evidence—not just the opinions of the psychological experts, but also Plaintiff's lifestyle and treatment history—ALJ Mangus appropriately concluded that what Plaintiff "can and cannot do" was accurately reflected in the RFC.

## B. The vocational expert testimony was given in response to a proper hypothetical

ALJs can rely only on vocational expert (VE) testimony given in response to an accurate hypothetical. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010). A hypothetical must represent Plaintiff's significant physical and mental impairments. *Id.*

The VE's testimony was based on an appropriate hypothetical. During the hearing, ALJ Mangus supplied the VE with the Plaintiff's age, education, work experience, and RFC. (Doc. # 8-1, at 52-55). Based on the VE's testimony, ALJ Mangus found that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Doc. # 8-1, at 23). Accordingly, ALJ Mangus found that Plaintiff was not

---

[2] Where a party "mention[s] a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones," the Court may deem that argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotation marks omitted).

disabled as defined in sections 216(I) and 223(d) of the Social Security Act. (Doc. # 8-1, at 24).

Plaintiff correctly notes that when the VE was supplied with restrictions assessed by Dr. Pack, the VE found the hypothetical person unable to perform any work available in the national economy (Doc. #12, at 6). But this is irrelevant. Because the ALJ afforded little weight to Dr. Pack's assessment, (Doc. # 8-1, at 22), the VE testimony based on that testimony was properly ignored. And while Plaintiff argues that the hypothetical differs from the assessments of agency consultants Drs. Brake and Stodola, Plaintiff offers little in support other than bald assertions.

Plaintiff's argument about VE testimony seems to reduce into her argument about the RFC adopted by ALJ Mangus—if the RFC is inaccurate, then the VE testimony relying on the RFC is similarly inaccurate. For reasons noted above, the Court finds the arguments regarding the RFC unpersuasive. *See supra* Part VI.A.. Thus, the derivative argument about the VE testimony also fails.

## V. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that ALJ Mangus's evidentiary findings are supported by substantial evidence. ALJ Mangus correctly concluded that the record evidence did not support a finding of "materially changed circumstances" under *Drummond*, 126 F.3d at 837. Thus her adoption of the prior ALJ's RFC was appropriate under principles of administrative res judicata. Accordingly,

**IT IS ORDERED** as follows:

1.      The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2.      Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**.

3.      Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**.

4.      A Judgment affirming this matter will be entered contemporaneously herewith.

This 12th day of September, 2013.



Signed By:
*David L. Bunning*
**United States District Judge**

G:\DATA\SocialSecurity\MOOs\London\12-217 MOO granting MSJ.wpd